UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

KIMBERLY EATON and ANNA DEVITO,

        Plaintiffs,

  v.

CAVALIA (USA) INC.,

        Defendant.

No. C 20-05219 WHA

**ORDER RE MOTION TO REMAND**

## INTRODUCTION

In this wage-and-hour putative class action, plaintiffs move for remand. For the reasons stated below, plaintiffs' motion is **GRANTED**.

## STATEMENT

Defendant Cavalia (USA) Inc. is a Vermont-based corporation that puts on horse entertainment productions. Cavalia Communications, Inc., is a California corporation. The operative complaint alleges that Cavalia and Cavalia Communications employed plaintiff Kimberly Eaton, a California citizen, as a "VIP – Banquet Helper" from early February 2016 to early April 2016 and then again, from early November 2016 to mid-January 2017. During this period, plaintiff Eaton alleges Cavalia and Cavalia Communications engaged in, among other things, illegal payroll practices and policies such as failing to pay overtime and meal periods. Cavalia and Cavalia Communications allegedly also employed plaintiff Anna DeVito, a California citizen, between 2016 and 2017 as well (Dkt. No. 1).

In January 2017, prior to the commencement of the underlying action, plaintiff Eaton filed an initial claim with the California Division of Labor Standards and Enforcement alleging the following:

> 1. Meal period premiums pursuant to IWC Wage Order 7 for 13 days at $15.00 per day earned from November 14, 2016, to January 8, 2017, claiming $195.00.
>
> 2. Penalties pursuant to Labor Code § 203 for 30 days at the rate of $120.00 per day, claiming $3,600.00.

against Cavalia. Default judgment was entered in her favor (Mot. Exh. A).

In September 2019, plaintiff Eaton filed a putative class action complaint in the Superior Court of the State of California for the County of San Francisco against Cavalia. In October 2019, plaintiff Eaton mailed Cavalia's agent a PAGA notice. In January 2020, Cavalia answered the complaint. In March 2020, plaintiff Eaton obtained a state order authorizing service of the complaint on Cavalia Communications. The state court granted the application in February 2020. That same month, plaintiff Eaton filed an amended complaint adding another claim and Cavalia Communications as a defendant. In April 2020, the parties stipulated to the filing of a second amended complaint, which included plaintiff DeVito. In May 2020, plaintiff Eaton served the September 2019 summons and complaint on Cavalia Communications. On July 29, 2020, Cavalia removed the action here. Cavalia served plaintiffs with the removal documents the next day.

The operative complaint alleges: (1) Failure to Pay Minimum Wages; (2) Failure to Pay Overtime Wages; (3) Failure to Provide Required Meal Periods; (4) Failure to Provide Required Rest Periods; (5) Failure to Indemnify Employees for Necessary Expenditures Incurred in Discharge of Duties; (6) Failure to Furnish Accurate Itemized Wage Statements; (7) Failure to Timely Pay All Wages Due to Discharged and Quitting Employees; (8) Representative Action for Unfair and Unlawful Business Practices; and (9) Civil Penalties Pursuant to PAGA. Following removal of the action in July 2020, Cavalia moved to dismiss the action for failure to state a claim. In response, plaintiffs moved to remand the action (Dkt. Nos. 1, 11, 15).

1.   **MOTION TO REMAND.**

Remand to state court may be ordered either for procedural deficiency or for a lack of jurisdiction.  28 U.S.C. §§ 1441(a), 1447(c).  Plaintiffs argue both apply here.

   *A.   DIVERSITY OF CITIZENSHIP.*

Removal to federal court may be proper when the action presents a federal question or where diversity of citizenships exists and the amount in controversy exceeds $75,000.  28 U.S.C. §§ 1331, 1332.  Diversity removal requires complete diversity, meaning that each plaintiff must be of a different citizenship from each defendant.  *Caterpillar Inc. v. Lewis*, 519 U.S. 61, 68 (1996).  Courts may disregard the citizenship of a non-diverse defendant who has been fraudulently joined in determining whether complete diversity exists.  *Chesapeake & Ohio Ry. Co. v. Cockrell*, 232 U.S. 146, 152 (1914).

Fraudulent joinder exists when plaintiff fails to establish a cause of action against the non-diverse party in state court.  *Hunter v. Philip Morris USA*, 582 F.3d 1039, 1044 (9th Cir. 2009) (citations omitted).  In particular, defendant must shows that an "individual[ ] joined in the action cannot be liable on any theory."  *Ritchey v. Upjohn Drug Co.,* 139 F.3d 1313, 1318 (9th Cir. 1998).  But "if there is a possibility that a state court would find that the complaint states a cause of action against any of the resident defendants, the federal court must find that the joinder was proper and remand the case to the state court."  *Hunter*, 582 F.3d at 1046 (citations omitted).  The existence of federal jurisdiction is generally determined from the plaintiff's pleadings, but materials outside of the complaint may be considered.  *See Ritchey*, 139 F.3d at 1318.

Plaintiffs argue that the presence of Cavalia Communications destroys diversity, while Cavalia claims that Cavalia Communications is a fraudulently joined sham defendant.  The operative complaint here states that Cavalia Communications is a California corporation, that there is a unity of interest between Cavalia Communications and Cavalia, and that Cavalia Communications and Cavalia are alter egos.  The complaint also alleges that defendants (*i.e.* Cavalia and Cavalia Communications) employed plaintiffs, and failed to, among other things, "pay all wages," "provide rest and meal periods," and "maintain records" (Compl. ¶ 7).  As

3

1  ambiguous as the pleadings are, the face of the complaint still states claims against Cavalia
2  Communications, making remand proper.

3      The burden thus falls on Cavalia to demonstrate that Cavalia Communications is a sham
4  defendant. Cavalia has submitted an exhibit of a declaration it filed in state court, swearing
5  that Cavalia Communications "has no affiliation whatsoever" with them. Another exhibit
6  shows Cavalia Communications' statement of information, which describes Cavalia
7  Communications as a graphic design agency (Opp. Exh. 1, 7). Upon request by the Court,
8  Cavalia has sworn under oath that "[t]here never was and never has been any connection
9  between Cavalia (USA) Inc. and Cavalia Communications, Inc" (Dkt. No. 35). At this stage in
10 the litigation, Cavalia has met its burden in demonstrating fraudulent joiner. Furthermore, just
11 because Cavalia Communications failed to answer the state court complaint, allowing for the
12 possibility of a default judgment, does not necessarily mean that a state court would find that
13 the complaint states a cause of action against Cavalia Communications. The motion to remand
14 on the basis of lack of diversity of citizenship is accordingly **DENIED** and Cavalia
15 Communications is dismissed due to its sham status.

16         **B.**        AMOUNT IN CONTROVERSY.

17     The amount in controversy must exceed $75,000 for removal to be appropriate. The
18 removing party must file a notice of removal that includes "a plausible allegation that the
19 amount in controversy exceeds the jurisdictional threshold." *Dart Cherokee Basin Operating*
20 *Co., LLC v. Owens,* 574 U.S. 81, 89 (2014). If the amount is contested, both sides may submit
21 proof, such as "summary-judgment-type evidence relevant to the amount in controversy at the
22 time of removal." *Ibarra v. Manheim Investments, Inc.*, 775 F.3d 1193, 1197 (9th Cir. 2015).

23     Plaintiffs here contend Cavalia has deceptively claimed that the amount in controversy
24 will exceed $75,000. The operative complaint does not specifically state an amount in
25 controversy, but requests, among other things, compensatory damages for statutory damages,
26 meal and rest period premium wage compensation, liquidated damages, interest on unpaid
27 wages, penalties, and reasonable attorney's fees. As a benchmark, Cavalia paid plaintiff Eaton
28

4

1    a gross total of $6,748.14 for her two periods of employment and plaintiff DeVito as gross total

2    of $8,851.89 for her two periods of employment.

3        Cavalia, in its notice of removal, merely states that with all of these requested damages, it

4    reasonably believes the amount in controversy will exceed $75,000. In its opposition briefing,

5    Cavalia has failed to present any evidence to support this belief, only noting that plaintiff

6    Eaton's claims should be at least partially barred due to the California Division of Labor

7    Standards and Enforcement judgment and that plaintiffs' addition of the PAGA claim in the

8    second amended complaint increased the amount in controversy to $75,000 or more.

9        Cavalia has failed to demonstrate how the amount in controversy, even if aggregated,

10   would meet the jurisdictional threshold. *First*, for damages to be aggregated, the notice of

11   removal would need to at least refer to aggregating the amounts, which it has failed to do so

12   here. *See* 28 U.S.C. § 1446(a); *ARCO Envtl. Remediation, L.L.C. v. Dep't of Health & Envtl.

13   Quality of Mont.*, 213 F.3d 1108, 1117 (9th Cir. 2000); *O'Halloran v. Univ. of Wash.*, 856 F.2d

14   1375, 1381 (9th Cir. 1988). *Second*, even then, in order for plaintiffs' damages to be

15   aggregated in a putative class action, Cavalia would need to demonstrate that they have a

16   common or undivided interest. *Gibson v. Chrysler Corp.*, 261 F.3d 927, 944 (9th Cir. 2001)

17   (citations omitted).

18       Cavalia did not state which of plaintiffs' claims constitutes a common or undivided

19   interest, but counsel did state at oral argument that the PAGA penalties in total would exceed

20   $75,000. PAGA penalties are not, however, a common undivided interest that can be

21   aggregated to meet diversity jurisdiction. In *Urbino,* our court of appeals, in finding that a

22   plaintiff who filed a representative PAGA action, "the primary benefit of which will inure to

23   the state," did not satisfy the requirements of federal diversity jurisdiction held that "the state,

24   as the real party in interest, is not a 'citizen' for diversity purposes." *Urbino v. Orkin Servs. of

25   California, Inc.*, 726 F.3d 1118, 1123 (9th Cir. 2013).

26       Our court of appeals has left an open question as to whether the aggregation of PAGA

27   penalties is sufficient for removal under CAFA, but this order notes that Cavalia removed the

28   action pursuant to 28 U.S.C §§ 1332(a),(b), and 1441 (*i.e.* diversity jurisdiction), not CAFA.

Additionally, the notice of removal only states that a copy of the notice had been served under 28 U.S.C. § 1332(d), not that Cavalia was removing the action pursuant to 28 U.S.C. §§ 1332(d) 1453, 1711–1715 (*i.e.* CAFA). Cavalia's counsel further admitted at oral argument that it did not remove under CAFA. And even if Cavalia had removed under CAFA, the amount in controversy would still have to exceed five million dollars and Cavalia has failed to offer proof that it would regardless of the PAGA penalties.

Without the PAGA penalties or any other common undivided interest, a single plaintiff's damages here even when aggregated would not be sufficient to reach the $75,000 threshold. Plaintiffs have provided damages calculations estimating the total damages, including attorney's fees, for plaintiff DeVito to be approximately $15,000 (including a 25% share of PAGA penalties). Using the same formulas used by plaintiffs for plaintiff DeVito's estimates (but accounting for the fact that plaintiff Eaton worked for approximately 19 weeks), and even including the $3,369.52 from the California Division of Labor Standards and Enforcement judgment, a generous estimate of plaintiff Eaton's requested damages would be approximately $15,000. Neither of these amounts meets the jurisdictional threshold. Plaintiffs' counsel further swore at oral argument that he would not seek more than $75,000 in damages. Although he does not have the authority to make such a statement as to the PAGA penalties, the fact that plaintiffs will not seek more than $75,000 in total as to the remaining claims is still sufficient for remand given that the PAGA penalties cannot be aggregated.

Because the amount in controversy has not been met, the motion to remand is **GRANTED**. This order will not reach the arguments regarding other procedural deficiencies as failure to meet the jurisdictional threshold is sufficient to remand the case.

2. **REQUEST FOR JUDICIAL NOTICE.**

Federal Rule of Evidence 201(b) permits courts to take judicial notice of any fact "that is not subject to reasonable dispute because it . . . can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." While a court may take judicial notice of matters of public record at the motion to dismiss stage, it cannot take judicial notice

of disputed facts contained in such public records. *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 999 (9th Cir. 2018).

Defendant has requested judicial notice of the January 2017 complaint by plaintiff Eaton in California State Court (Case No. 18-97796). The request is unopposed. Because this document is an appropriate subject of judicial notice, defendant's unopposed request is **GRANTED**.

**IT IS SO ORDERED.**

Dated: October 19, 2020.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE

7